FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2022

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLE K., | No. 2:20-CV-0282-JAG |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Victoria B. Chhagan represents Nichole K. (Plaintiff); Special Assistant United States Attorney Erin F. Highland represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits in October 2017 and an application for Supplemental Security Income in March 2019 alleging disability since August 25, 2016, due to Right Neck Pain, Right Shoulder Injury, Right Upper Extremity Pain, Chronic Migraines, Upper Back Pain, Lower Back Pain, Sleeping Disorder and Extreme Daytime Fatigue, Lower Extremity Sciatica, Anxiety and Depression, and Obesity. Tr. 189, 208, 225-226. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) C. Howard Prinsloo held a hearing on August 15, 2019, Tr. 34-77, and issued an unfavorable decision on September 16, 2019, Tr. 15-27. The Appeals Council denied Plaintiff's request for review on June 9, 2020. Tr. 1-6. The ALJ's September 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 13, 2020. ECF No. 1.

**STATEMENT OF FACTS**

Plaintiff was born in 1973, Tr. 189, and was 42 years old on the alleged disability onset date, August 25, 2016, Tr. 226. She completed high school and had previously been licensed as a Certified Nursing Assistant (CNA). Tr. 54-57, 226. Plaintiff's disability report indicates she stopped working on August 25, 2016, because of her conditions. Tr. 225-226. Plaintiff testified at the administrative hearing that she stopped working in August of 2016 because she had a difficult time standing and preforming the repetitive actions of a cashier. Tr. 41.

Plaintiff testified she had right shoulder pain and migraine headaches, but shoulder surgery initially provided relief for those issues. Tr. 42-43. She stated, however, that she reinjured her shoulder working in her yard about three months following surgery. Tr. 43. Plaintiff also reported she had fibromyalgia, as diagnosed by a rheumatologist, and described the condition as chronic pain in her

back, hips, shoulder, and legs and fatigue.  Tr. 46-49.  With respect to her mental health, Plaintiff indicated she was on medication for depression and anxiety. Tr. 50-52.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the claimant

bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 16, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 25, 2016, the alleged disability onset date. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity, degenerative joint disease, and migraines. Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light exertion level work with the following limitations: she can occasionally climb ladders, ropes, and scaffolds; she is limited to occasional use of the right upper extremity to reach overhead occasionally; she can occasionally reach in front or laterally and push and pull occasionally; and she must avoid concentrated exposure to extreme cold or excessive vibration or hazards. Tr. 20.

///

At step four, the ALJ found Plaintiff was unable to perform her past relevant work.  Tr. 25.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of furniture rental consultant, investigator of dealer accounts, and usher.  Tr. 26-27.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 25, 2016, the alleged onset date, through the date of the ALJ's decision, September 16, 2019.  Tr. 27.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff asserts the following issues for the Court's review:

(1)    the ALJ erroneously found Plaintiff's fibromyalgia, as diagnosed by rheumatologist James Byrd, M.D., was not a medically determinable impairment;

(2)    the ALJ erred by finding Plaintiff did not have any severe mental impairments; and

(3)    the ALJ failed to meet his step five burden of showing there were jobs in the national economy that Plaintiff could perform.

ECF No. 14 at 1-2.

## DISCUSSION

**A.    James Byrd, M.D.**

Plaintiff's first contention is that the ALJ erred by rejecting the April 5, 2019 assessment of rheumatologist James Byrd, M.D.  ECF No. 14 at 3-7.  Defendant

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

responds that the ALJ reasonably determined Dr. Byrd's opinion was unpersuasive.  ECF No. 15 at 6-8.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an acceptable medical source. 20 C.F.R. § 416.920c(c).

The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  *Id.*  The regulations make clear that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 416.920a(b).  The ALJ may explain how he considered the other factors, but the ALJ is not required to except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*

Supportability and consistency are further explained in the regulations as follows:

> (1) *Supportability.*  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.*  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c).

On April 5, 2019, Dr. Byrd filled out a "medical report" on behalf of Plaintiff's attorney, Tr. 768, indicating Plaintiff had been diagnosed with fibromyalgia characterized as chronic widespread pain with greater than 11 tender points, would need to lie down 30 to 60 minutes every four hours during the day, would miss on average four or more days of work per month, and was restricted to sedentary exertion level work, Tr. 769-770.  He opined work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and explained "she reports work makes her worse." Tr. 769.  Dr. Byrd checked a box on the form indicating Plaintiff's limitations had existed since at least August 2016.  Tr. 770.

The ALJ did not find the opinion of Dr. Byrd persuasive, noting it was not supported by his examination records and not consistent with Plaintiff's level of activity reflected in the record.  Tr. 24.

With respect to supportability, although the medical record contains a September 2017 report of "possible" fibromyalgia, Tr. 484, there is no firm diagnosis of fibromyalgia until the April 2019 report of Dr. Byrd, Tr. 1023.  Dr. Byrd's opinion that Plaintiff's limitations from fibromyalgia have existed since August 2016 is thus not supported.  In addition, there is no evidence Plaintiff met the durational requirement for fibromyalgia as of the ALJ's September 2019 decision.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months). Furthermore, as noted by the ALJ, Plaintiff's January 2019 examination with Dr. Byrd revealed normal range of motion with handgrip, wrists, elbow, shoulder, hip and knee, and Dr. Byrd diagnosed polyarthralgia, not fibromyalgia. Tr. 18, 24, 997.

As to consistency, the ALJ noted Dr. Byrd's restrictions were inconsistent with Plaintiff's activity level during the relevant time period. Tr. 24. The ALJ noted evidence from May 30, 2019 showed Plaintiff reported she was walking one to two miles every other day, Tr. 1049, and evidence that Plaintiff traveled to South Dakota and had moved a 100-pound item on at least one occasion, Tr. 383. Tr. 24. The ALJ found other medical professionals who opined Plaintiff was capable of performing a range of light and medium exertion level work were more persuasive. Tr. 24-25 citing Tr. 89-90, 105-107.

The Court finds the ALJ provided sufficient rationale for finding the April 5, 2019 "medical report" of Dr. Byrd unpersuasive. Consequently, the ALJ did not err in finding fibromyalgia was not a medically determinable impairment or concluding Plaintiff was capable of performing a restricted range of light exertion level work.

**B.    Mental Impairments**

Plaintiff next argues the ALJ erred by failing to find Plaintiff had severe mental impairments. ECF No. 14 at 7-14. Plaintiff specifically contends the ALJ erred by rejecting, without providing specific and legitimate reasons, the December 2018 report of Thomas Genthe, Ph.D., which assessed marked psychological limitations. ECF No. 14 at 9-10.

Defendant responds that the ALJ reasonably determined Dr. Genthe's opinion was unpersuasive. ECF No. 15 at 6-8.

On December 14, 2018, Dr. Genthe completed a psychological/psychiatric evaluation of Plaintiff. Tr. 774-782. Dr. Genthe noted no records were provided

for review and Plaintiff's claimed symptoms were as follows: "I get migraine headaches and I have a shoulder injury that I had surgery on, my feet go numb, I have arthritis." Tr. 774. Dr. Genthe's summary also indicates Plaintiff presented with "primary medical claims as the reasons why she was not currently employed." Tr. 777.

Dr. Genthe performed a clinical interview; diagnosed Major Depressive Disorder, with anxious distress, Social Anxiety Disorder, and Other Specified Personality Disorder (with borderline features); and assessed Plaintiff's ability to maintain appropriate behavior in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms as markedly impaired. Tr. 776-777. He rated Plaintiff's overall severity as "marked." Tr. 777. However, all categories of Dr. Genthe's mental status examination were found to be within normal limits. *See* Tr. 778-779.

The ALJ determined Dr. Genthe's December 2018 opinion was unpersuasive.[2] Tr. 25. The ALJ indicated the opinion was unsupported as Dr. Genthe reviewed no records, he relied on Plaintiff's self-report, and the mental status exam was mostly normal. Tr. 25. The ALJ also found the opinion was inconsistent with Plaintiff's claim of physical health, rather than mental health, as her primary barrier to working and Plaintiff's stable mental health on medication. Tr. 25.

Regarding supportability, Dr. Genthe noted no records were provided for his review, Tr. 774, and, as observed by the ALJ, Dr. Genthe's mental status examination was mostly normal, Tr. 778-779. Tr. 25. Therefore, it was reasonable

---

[2]As noted by Defendant, ECF No. 15 at 8, although the ALJ first stated the opinion was "persuasive," Tr. 25, it is apparent from a plain reading of the analysis of Dr. Genthe's opinion and ultimate conclusion by the ALJ that this was a scrivener's error.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

for the ALJ to find Dr. Genthe relied primarily on Plaintiff's non-credible self-reports.  Tr. 25; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

As to consistency, the ALJ noted Plaintiff has primarily indicated her physical problems, rather than mental health symptoms, prevented her from working.  Tr. 25, 774, 777.  Other than Plaintiff's report of a depressed mood, Tr. 778, Dr. Genthe's mental status exam findings were largely normal, Tr. 778-779, yet the report rated Plaintiff's overall severity as marked, Tr. 777.  The ALJ also noted Dr. Genthe's findings were inconsistent with other medical professionals of record, found persuasive by the ALJ, Tr. 25, who determined Plaintiff's mental health symptoms were mild and stable, *see* Tr. 86, 102-103. Finally, the ALJ noted the record shows Plaintiff's mental health was stable on medications.  Tr. 25; *see* Tr. 473 (Plaintiff reported doing well on current regimen), 1084 (mild depression noted as stable with mediation), 1301 (mild recurrent major depression noted as stable on medication).

The Court finds the ALJ provided sufficient rationale for finding Dr. Genthe's December 2018 opinion unpersuasive.  Without taking into consideration Dr. Genthe's opinion of marked mental limitations, the substantial weight of the medical evidence fails to demonstrate Plaintiff had a severe medically determinable mental impairment during the relevant time period.  The ALJ's step two determination is thus without error.

**C.    Step Five**

Plaintiff contends the ALJ also erred at Step Five because the jobs identified by the vocational expert would be eliminated if the ALJ's RFC determination reflected Plaintiff's mental limitations.  ECF No. 14 at 13-20.

///

///

At Step Five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Commissioner considers the claimant's RFC, age, education, and work experience in order to determine if the claimant is able to perform a job in the national economy.  20 C.F.R. § 416.920(a).  The ALJ may also rely on the testimony of a vocational expert for information on what occupations a claimant can perform given his or her RFC.  20 C.F.R. § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

Plaintiff has not demonstrated that the ALJ erred with respect to his analysis of the medical opinion evidence of record or that the ALJ's RFC determination lacks support.  *See supra*.  The Court finds the ALJ's RFC determination is supported by substantial evidence in this case.

At the administrative hearing, the vocational expert testified that with the RFC assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy, including the positions of furniture rental consultant, investigator of dealer accounts, and usher.  Tr. 64-66. Since the vocational expert's testimony was based on a properly supported RFC determination by the ALJ, the Court finds the ALJ did not err at step five of the sequential evaluation process in this case.  Tr. 26-27.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of error. Accordingly, **IT IS HEREBY ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

*///*

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED March 30, 2022.



JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 12